## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE<br>MATTHEW ZICARO,<br>DEBTOR<br><br>DISTRIBUTOR CORPORATION<br>OF NEW ENGLAND,<br><br>      Plaintiff<br>v.<br><br>MATTHEW ZICARO,<br><br>      Defendant | CHAPTER 7<br>CASE NO. 07-43732-JBR<br><br><br><br>AP. NO. 08-04062 |

### MEMORANDUM OF DECISION

This matter came before the Court for a trial on Counts I and II of the Complaint filed by Plaintiff, Distributor Corporation of New England, objecting to the discharge of the Debtor, Matthew M. Zicaro, pursuant to 11 U.S.C. §§ 727(a)(4)(A) & (a)(3) of the Bankruptcy Code respectively. Having considered the testimony, demeanor, and credibility of witnesses, the following constitutes the Court's findings of fact and conclusions of law in accordance with the Federal Rules of Bankruptcy ¶ 7052.

Count I

Section 727(a)(4)(A) of the Bankruptcy Code provides that the Court shall deny a debtor a discharge if he "knowingly and fraudulently . . . made a false oath or account." The Plaintiff must prove by a preponderance of the evidence, *see Grogan v. Garner*, 498 U.S. 279, 287 (1991), that (1) the Debtor made a statement under oath, (2) the statement was false, (3) the Debtor knew the statement was false, (4) the Debtor made the statement

with fraudulent intent, and (5) the statement was material to the bankruptcy case. Once it appears that the oath is false, the burden falls on the Debtor to refute the evidence.

Where a debtor knows the truth and nonetheless willfully and intentionally swears to a false statement, he makes a knowing and fraudulent oath. *See Gordon v. Mukerjee (In re Mukerjee)*, 98 B.R. 627, 629 (Bankr. D. N.H. 1989). At trial, the Debtor acknowledged that he signed his initial Chapter 13 bankruptcy petition, on October 10, 2007, under the penalty of perjury, which is equivalent to verification under oath. Further, there is no question that the Debtor's statements were false and that he knew they were false. At the time of filing, the Debtor failed to include personal mortgage debt and personal loans that he had taken. Collateralized by the Debtor's personal assets, these obligations were clearly of a personal nature despite contentions to the contrary; thus, the Debtor's failure to include them in the initial Chapter 13 petition constitutes a false statement. In fact, by his own admission, the Debtor acknowledged that he intentionally omitted these "business related" matters from his schedules and Statement of Financial Affairs "to keep the business going."

It is also uncontested that the Debtor's omissions were material to the bankruptcy proceeding. The very essence of the Bankruptcy Code is to ensure that complete, truthful, and reliable information is available at the outset of the proceedings. *See In re Mascolo*, 505 F.2d 274, 278 (1st Cir. 1974). As such, a fact is material when it relates to a debtor's business transactions or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property. *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984). Here, the Debtor's failure to accurately identify personal property on Schedule B, secured debt on Schedule D, and unsecured

debt on Schedule F was material to the bankruptcy case, regardless of quantity or valuation. The Debtor's testimony not only corroborated the differences between the initial and amended schedules, but also conceded that these errors were substantial. At trial, the Debtor noted that he did not intend to defraud, mislead, or cheat his creditors. However, his intent is irrelevant to the question of materiality because his creditors must judge for themselves what will benefit, and what will prejudice, them. *See In re Chalik*, 748 F.2d at 618.

As a result, the remaining issue before the Court is a narrow one: whether the Debtor's false oath was made with a fraudulent intent, warranting a denial of his discharge pursuant to section 727(a)(4)(A). Discharge is a privilege reserved for debtors who fulfill their unconditional, absolute obligations to make full disclosure of all matters relevant to the administration of the estate. As a result, this Court has routinely held that a showing of a reckless disregard for the truth satisfies the fraudulent intent requirement. *See Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987). While ignorant or inadvertent omissions are not indicative of such intent, the statute requires no more than an intentional falsehood in a material matter. *See In re Emerson*, 244 B.R. 1, 28 (Bankr. D. N.H. 1999). Consequently, reckless disregard may be inferred from circumstantial evidence, such as the cumulative effect of a series of innocent mistakes. Lastly, the Court must consider not only the omissions in the Debtor's schedules but also his financial sophistication. *See Pergament v. Smorto (In re Smorto)*, No. 07-CV-2727, 2008 WL 699502, at *5 (E.D.N.Y. Mar. 12, 2008).

Applying the foregoing principles to this case, the Court finds that the Plaintiff satisfied its burden of proof that the Debtor made the false statements with a fraudulent

3

intent.

- As the Chief Executive Officer of the Zicaro Mechanical Services, the Debtor is undoubtedly a person with some business experience and sophistication.
- The Debtor's failure to include $611,800 in personal property on Schedule B at the time he filed the Chapter 13 petition was anything but inadvertent.
- Among other things, this amount included the following personal receivables: a $405,000 loan to Zicaro Mechanical on which the Debtor was the lender, a $100,000 sports collection that collateralized a note the Debtor had with Mr. Schacht, a $10,000 deposit on pre-construction condominiums being constructed in Portland, ME, a $15,000 cash deposit (taken from business accounts) to refinance his home, and an additional $15,000 non-refundable deposit (also taken from business accounts) for a jewelry purchase.
- Notably, the Debtor even testified that there is no distinction between him and his business and that his intent was to "save [his] house and keep the business going." As such, the Debtor's inconsistent testimony undermined his credibility.
- The Debtor's failure to properly report four bank accounts on the Statement of Financial Affairs also underscores his fraudulent intent because had he been successful, the Trustee would not be able to investigate those accounts for avoidable transactions or transfers.
- The Debtor's failure to list an additional $ 636,000 in secured debt on Schedule D was hardly an innocent mistake.
- The Debtor verified the difference between the original and amended Schedule D and indicated that it included a $50,000 note payable to Mario Romeo and a

4

$55,000 note payable to Donald Charlebois. The evidence submitted at trial and the Debtor's own testimony disclosed that the Debtor's primary residence (in Princeton, MA) collateralized each of these notes. In both instances, the loan disbursement check was made payable directly to the Debtor instead of to Zicaro Mechanical. Not only did the Debtor concede that he and the business "are the same," but he also acknowledged that he <u>personally</u> guaranteed these loans.

- Additionally, the Debtor obtained a third mortgage from TDBanknorth for $195,000 on an investment property he owned in Worcester, MA. Despite his assertion that the funds received were ultimately used to sustain business operating expenses, the Debtor once again acknowledged that the underlying collateral was a personal asset. Consequently, the Court finds that there is no validity to the Debtor's contention that these obligations were solely business related.

- The Debtor's failure to identify $987,787 in unsecured debt on Schedule F further demonstrates a cavalier indifference and a pattern of disdain for the truth.

- The Debtor testified and the evidence submitted at trial confirmed that due to the business's cash flow problems, he turned to his family and friends for additional funds.

- Of the total $987,787 difference between the initial and amended Schedule F, $614,000 (approximately 62%) was attributable to such loans. This balance is further catalogued into nine individual loans including a $150,000 loan from Frank and Charlotte Zicaro (the Debtor's parents), a $62,500 loan from Juola Stefani (the Debtor's domestic partner), and a $40,000 loan from Petrika Stefani

(Juola Stefani's father).

- With respect to each loan, the Debtor could not accurately recall the mode (e.g., cash, check, or wire) or the party (e.g., the Debtor or Zicaro Mechanical) to whom the loan was made payable. Without any additional documentation, the Debtor continued to make a bare assertion that these loans were "business related." Notably, however, during his deposition, the Debtor explained that he borrowed personally. As a result, the Court finds that the Debtor substantially misrepresented his unsecured claims.

In summary, the Debtor's the subsequent amendments of bankruptcy schedules do not excuse the initial omissions on Schedules B, D, and F and the Statement of Financial Affairs. An inference of fraud is permissible when a debtor files an amendment only as a result of developments during or after the creditors meeting, or without adequate explanation of the initial inaccuracy. *See In re Tully*, 818 F.2d at 110. Here, the Debtor's amendments came only after the Trustee ascertained that the business was no longer viable and that there was some personal ownership of the assets by the Debtor. The testimony and evidence presented at trial demonstrated that meaningful disclosure was accorded too low a priority. Consequently, the Court finds that the cumulative effect of the omissions was a false oath made in reckless disregard for the truth, and judgment will enter for the Plaintiff on Count I accordingly and the discharge is denied.

Count II

The Plaintiff objects to Debtor's discharge pursuant to section 727(a)(3). Section 727(a)(3) provides that the Court shall deny the debtor a discharge if he "concealed, destroyed, mutilated, or failed to keep or preserve any recorded information, including

books, documents, records, and papers, from which [his] financial condition or business transactions might be ascertained," unless the circumstances of the case justify such act or failure to act. Because section 727 makes complete financial disclosure a condition precedent to the privilege of discharge, a debtor must provide dependable information on which a creditor can rely in tracing the debtor's financial history.

Initially, the Plaintiff must prove, by a preponderance of the evidence, that: (i) the Debtor concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information; and (ii) that the recorded information was from which the Debtor's financial condition or business transactions might be ascertained. A creditor need not, however, organize and reconstruct a debtor's business affairs; instead, the debtor has the duty to maintain and retain comprehensible records. *See Krohn v. Frommann (In re Frommann)*, 153 B.R. 113, 117-18 (Bankr. E.D.N.Y. 1993).

For the foregoing reasons, the Court finds that the Plaintiff satisfied its burden of proof that the Debtor failed to provide adequate documentation from which Plaintiff could reasonably ascertain the Debtor's financial condition.

- The Debtor earned income from his corporation pursuant to a "rental arrangement." The performance (or non-performance) of this arrangement somehow resulted in a loan obligation of $405,000, which was directly payable to the Debtor.
- The Debtor failed to provide any evidence documenting the terms of this arrangement.
- While the Debtor did not deny that his income came from the corporation, he failed to provide any record of the itemized and aggregate amount of such

payments or the frequency thereof.

- Nor did the Debtor provide ledgers or other records reflecting monthly rent accruals and rent payments (if any) to properly account for the $405,000 loan payable balance. Instead, the only documentation that the Debtor provided was the corporation's annual tax return, indicating the aggregate payable amount in a broadly defined category over a one-year period.

- Furthermore, the schedules supporting the Zicaro Mechanical's 2006 tax return indicated that the corporation carried over approximately $306,000 of the total loan payable from the previous year (2005).

- Thus, the Debtor's testimony that he became aware of the $405,000 receivable only after reviewing Zicaro Mechanical's tax returns is not convincing.

- Additionally, the Debtor's failure to itemize the payables and receivables from any given job demonstrated that the Debtor did not maintain adequate books and records. The only evidence submitted at trial was Zicaro Mechanical's general ledger, which merely disclosed an aggregated monthly total for the corporation's deposits and sales.

- Similarly, the ledgers generated by two separate check cashing services were inadequate because they only reflected the name of the party that issued the check and did not clearly delineate the payee (e.g., the Debtor or Zicaro Mechanical). Given the transaction volume at each check cashing agency, it is impossible to differentiate the Debtor's financial position from that of Zicaro Mechanical.

- Despite the Debtor's testimony that the account at the check cashing agency was for business related transactions only, the admitted exhibits indicate that the

account is in the Debtor's name, as opposed to that of the corporation. Again, this only compounded the confusion between the Debtor's financial standing and that of the corporation.

In conclusion, complete and accurate records are necessary to verify the Debtor's oral statements. The Debtor cannot hide behind his explanation that he did not know the corporation owed him $450,000 in response to the charge that he misrepresented his bankruptcy petition and at the same time argue that he maintained adequate records. The Plaintiff cannot rely on the Debtor's oral representations concerning these matters without also having some independent means of substantiating such representations. Accordingly, the Court can only conclude that the Debtor failed to keep and preserve records from which his financial condition might be ascertained. Therefore, judgment will enter denying the Debtor his discharge under 11 USC § 727(a)(3).

A separate order will issue.

Dated: June 22, 2009

By the Court,

_Joel B. Rosenthal_
_____
Joel B. Rosenthal
United States Bankruptcy Judge